IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MARK F. McCAFFREY, )
)
    Plaintiff, )
)
v. ) Civil Action No. 1:17-cv-937 (AJT/IDD)
)
MICHAEL L. CHAPMAN, *et al.*, )
)
    Defendants. )
)

## MEMORANDUM OPINION

Plaintiff Mark F. McCaffrey was a Deputy Sheriff in the Loudoun County Sheriff's Office ("LCSO") until December 31, 2015. In this action, he alleges that Defendant Michael L.Chapman, the incumbent Sheriff of Loudoun County, failed to reappoint him in retaliation for McCaffrey's support of Chapman's political opponent and that Loudoun County and its Board of Supervisors ("County Defendants") had an obligation to intervene and failed to do so. More specifically, McCaffrey alleges that Defendants' actions infringed his rights under the First Amendment of the United States Constitution in violation of 42 U.S.C. § 1983 as well as his rights under Article I, Section 12 of the Virginia Constitution ("Section 12"), which he asserts creates a common law cause of action for damages.

Presently pending before the Court are Defendant Chapman's Motion to Strike [Doc. No. 5]; Defendant Chapman's Motion to Dismiss [Doc. No. 7]; Defendants Loudoun County and the Board of Supervisors of Loudoun County's ("County Defendants") Motion to Dismiss Counts II and IV of the Complaint [Doc. No. 9]; and Plaintiff McCaffrey's Motion for Partial Summary Judgment [Doc. No. 17]. For the reasons set forth below, McCaffrey, by virtue of the nature of his position as Deputy Sheriff, as alleged in his Complaint, falls within the *Elrod-Branti*

1

exception to the general rule that public employees may not be terminated in retaliation for political speech. Accordingly, Defendants' Motions to Dismiss will be GRANTED, McCaffrey's Motion DENIED, all other motions DENIED as moot and this action DISMISSED.

## I. FACTUAL BACKGROUND

McCaffrey alleges the following facts, which the Court accepts as true for the purposes of the pending motions.

Prior to December 31, 2015, McCaffrey was a detective in the LCSO major crimes unit. Complaint [Doc. No. 1, Exhibit 2] ("Compl.") ¶ 11. Before coming to the LCSO in 2005, McCaffrey was a police officer for twenty years in Westchester County, New York and New York City. Compl. ¶ 11. In the course of his duties in the major crimes unit at LCSO, McCaffrey "served as the lead detective in complex, high-profile cases, including rape, robbery and homicide investigations." Compl. ¶ 12. McCaffrey's duties as deputy sheriff and lead investigator included communicating with the Commonwealth's Attorney and the Medical Examiner's Office on behalf of the LCSO and coordinating their resources with those of the LCSO. Comp. ¶ 74h.

Chapman has been Sheriff of Loudoun County, Virginia since January 2012. Compl. ¶ 15. Sheriffs in the Commonwealth of Virginia are elected to four year terms. While in office, sheriffs are authorized to appoint deputy sheriffs to assist in the conduct of the sheriff's duties. These deputies' appointments last only as long as the sheriff's term. At the end of a sheriff's term, even if the sheriff is reelected, all the sheriff's deputies must be reappointed and re-sworn to keep their positions in the new term. It is customary in the LCSO that all of the approximately 600 deputies are re-sworn at the beginning of each term. Compl. ¶ 34.

During Chapman's first term as Sheriff of Loudoun County, McCaffrey became concerned about Chapman's competence and fitness for the office of sheriff. Compl. ¶ 65. The Complaint alleges, *inter alia*, that Chapman used his position as sheriff to do favors for friends, family, and campaign contributors, Compl. ¶ 67, discriminated against minority deputies in assigning undesirable work, Compl ¶ 69, was verbally abusive of the deputies in the LCSO, Compl. ¶ 74, and mismanaged the LCSO to the detriment of the Office's effectiveness, Compl. ¶¶ 75–78. For these reasons, McCaffrey supported Eric Noble, rather than Chapman, for the Republican nomination for the office of Sheriff of Loudoun County in the 2015 election cycle. Compl. ¶ 79. McCaffrey's support of Noble consisted of placing a sign in front of his house supporting Noble and serving as a delegate for Noble at the Republican nominating convention. Compl. ¶ 80.

Chapman won the Republican nomination at the convention and ultimately won the general election to keep his seat as sheriff. Upon learning of McCaffrey's support for Noble, Chapman allegedly told McCaffrey's Division Chief, Captain Marc Caminitti, to "keep his shop" in line. Compl. ¶ 86. The Complaint also alleges that Chapman told LCSO Public Affairs Officer, Liz Mills, that "Mark [McCaffrey] was there with Eric [Noble]. I'm going to get him," in reference to McCaffrey's support for Noble at the nominating convention. Compl. ¶ 87. Additionally, Major Richard Fiano, a Senior Commander in the LCSO, told McCaffrey that he should not have been a delegate for Noble and "[y]ou live by the sword; you die by the sword." Compl. ¶ 89. On December 10, 2015, McCaffrey received a letter from Chapman advising that his appointment as deputy sheriff "ends at midnight on December 31, 2015," and not indicate that he was to be reappointed. Compl. ¶ 90. The letter did not indicate why McCaffrey was not to be re-appointed to his position. Compl. ¶ 91. McCaffrey was in fact not re-sworn as a deputy

sheriff after his prior appointment ended December 31, 2015. Additionally, the Complaint alleges that Chapman ordered McCaffrey's supervisors to lower the score of his final evaluation, preventing McCaffrey from receiving a performance bonus. Compl. ¶ 94.

McCaffrey further alleges that the County Defendants "assumed responsibility to ensure the protection of [constitutional rights] of LCSO employees." Compl. ¶ 123. The Complaint alleges that Chapman and the County Defendants entered into a Cooperative Agreement, which applies certain regulations otherwise only applicable to County employees to LCSO employees.[1] Compl. ¶ 39. The Cooperative Agreement provides that the Sheriff Chapman could only take personnel actions consistent with the County's "personnel policies and regulations," Compl. ¶ 41, and that all personnel actions must be submitted to and approved by the County's Human Resources Department 30 days before they become effective, Compl. ¶ 42.

Despite the County Defendants' alleged obligations under the Cooperative Agreement, McCaffrey alleges they "followed (a) a practice of deliberate indifference to defendant Chapman's abuse of his power and (b) failed to act to carry out their responsibility under the Cooperative Agreement to halt the retaliation against Mr. McCaffrey." Compl. ¶ 123. McCaffrey alleges that the County Defendants had ample means to intervene on his behalf against Chapman in light of the fact that the they provide 75% of the budget for the LCSO and that the County Defendants have aggressively enforced its personnel rules against the LCSO under past sheriffs. Compl. ¶¶ 124-25. The Complaint additionally alleges that Laurie Hunter, a Senior Management Analyst in the Loudon County Department of Human Resources, knew of Chapman's intent not to reappoint McCaffrey and approved it pursuant to the County Defendants' Obligations under the Cooperative Agreement.

---

[1] Under Virginia law, the sheriff is an independent constitutional officer and not an employee or agent of the county he serves. Va. Const. Art. 7, Section 4. Therefore, LCSO employees are not employees of Loudoun County.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1994). In considering a motion to dismiss, "the material allegations of the complaint are taken as admitted," *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted), and the court may consider exhibits attached to the complaint, *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F. 2d 1462, 1465 (4th Cir. 1991). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*; *see also Bd. of Trustees v. Sullivant Ave. Properties, LLC*, 508 F. Supp. 2d 473, 475 (E.D. Va. 2007). A motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (the complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face"); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). As the Supreme Court stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008), "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the conduct alleged."

## III. ANALYSIS

McCaffrey's Complaint contains the following four counts:

- Count I: Infringement of McCaffrey's First Amendment rights, in violation of 42 U.S.C. § 1983 (against Defendant Chapman);

5

- Count II: Infringement of McCaffrey's First Amendment rights, in violation of 42 U.S.C. § 1983 (against County Defendants);

- Count III: Violation of McCaffrey's rights under Article I, Section 12 of the Virginia Constitution (against Defendant Chapman);

- Count IV: Violation of McCaffrey's rights under Article I, Section 12 of the Virginia Constitution (against County Defendants).

## A. The *Elrod-Branti* Doctrine

Generally, public employees cannot be fired "solely for the reason that they were not affiliated with a particular political party or candidate." *Knight v. Vernon*, 214 F.3d 544, 548 (4th Cir. 2000). However, the Supreme Court in *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980) recognized an exception to this general rule. The Court in *Elrod* recognized that certain public employees may be terminated for partisan reasons without offending the First Amendment where doing so would "further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained . . . outweigh[s] the loss of constitutionally protected rights." *Elrod*, 427 U.S. at 363. The Court expanded upon this in *Branti*, noting that "if an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the States' vital interest in maintaining governmental effectiveness and efficiency." 445 U.S. at 517. The ultimate question in this inquiry is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518.

The Fourth Circuit has established a two-step test to determine whether partisan affiliation is an acceptable basis for termination of a public employee. First, a court must "examin[e] whether the position at issue, no matter how policy-influencing or confidential it may be, relates to partisan interests or concerns. That is, does the position involve government

decisionmaking on issues where there is room for political disagreement on goals or their implementation?" *Stott v. Haworth*, 916 F.2d 134, 141 (4th Cir. 1990) (internal citations, quotation marks, and alterations omitted). If the position is sufficiently "partisan," "the next step is to examine the particular responsibilities of the position to determine whether it resembles a policy-maker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." *Id.* at 142. The goal of this test is to determine whether "'there is a rational connection between shared ideology and job performance'" and therefore that "'political affiliation is an appropriate requirement'" for a given position. *Id*. (quoting *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988)). If a public employee's position is both partisan and that of a policymaker under this test, that employee is exempt from the traditional bar on partisan termination and therefore cannot state a claim alleging violation of his First Amendment rights.

    1.    **McCaffrey's Position in the LCSO was Partisan**

"The law in this circuit is clear that sheriffs in Virginia have the right to lawfully terminate their deputies for political affiliation reasons." *Pike v. Osborne*, 301 F.3d 182, 186 (4th Cir. 2002) (Hamilton, J., concurring) (citing *Jenkins v Medford*, 119 F.3d 1156, 1163-65 (4th Cir. 1997) (en banc)). In that regard, the Fourth Circuit has held that the deputies of elected sheriffs are "partisan" under the *Stott* test. In *Jenkins*, the Fourth Circuit, en banc, noted with respect to a claim similar to McCaffrey's by a North Carolina sheriff's deputy that where sheriffs are elected "[t]he sheriff owes a duty to the electorate and the public at large to ensure that his espoused policies are implemented" and that "[d]eputy sheriffs play a special role the sheriff's policies and goals." 119 F.3d at 1162. In *Knight*, the Fourth Circuit explained that the election of a particular candidate for sheriff over another presumably acts as the electorate's ratification of

one candidate's policies and priorities over the other's. *Knight*, 214 F.3d at 549 ("[W]hen sheriffs are elected by popular vote, as they are in North Carolina, they have an obligation to the voters to implement their espoused policies."). These policies and priorities are not implemented by the sheriff acting alone, but through the sheriff's deputies. *Jenkins*, 119 F.3d at 1162. The First Amendment's protection against partisan retaliatory termination does not require "that a sheriff must attempt to implement his policies and perform his duties through deputies who have expressed clear opposition to him." *Id.* at 1165.

None of the allegations in the complaint distinguishes Virginia deputy sheriffs from their North Carolina counterparts held to be "partisan" in *Jenkins*. A Virginia deputy sheriff, like those in North Carolina, has "powers coterminous with his principal, the elected sheriff." *Jenkins*, 119 F.3d at 1163 (quoting N.C. Gen. Stat. § 17E-1); *compare* Va. Code § 15.2-1603 ("[the sheriff may] appoint one or more deputies, who may discharge any of the official duties of their principal during his continuance in office, unless it is some duty the performance of which by a deputy is expressly forbidden by law."). Virginia deputies, like those in *Jenkins*, are agents of their principal, the elected sheriff, who can be held liable for the actions of his deputies. *Compare Jenkins*, 119 F.3d at 1163 ("Our circuit and North Carolina state courts agree that the sheriff can be held liable for the misbehavior of the deputies.") *with Whited v. Fields*, 581 F. Supp. 1444, 1455 (W.D. Va. 1984) ("[N]ot only is the sheriff liable civilly for the acts of his deputy in Virginia, but he also is liable criminally and can be fined for the conduct of his deputy."). Under the decisions of the Fourth Circuit, the facts alleged in the Complaint indicate that the office of deputy sheriff in Virginia is partisan and "involve[s] government decisionmaking on issues where there is room for political disagreement on goals or their implementation[.]" *Stott*, 916 F.2d at 141.

### 2. McCaffrey was a Policymaker

Having determined that the office of deputy sheriff in Virginia is partisan, "the next step is to examine the particular responsibilities of the position to determine whether it resembles a policy-maker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." *Id.* at 142. The allegations in the complaint, taken as true and with all inferences drawn in favor of the Plaintiff, indicate that McCaffrey's role as deputy sheriff was that of a "policymaker." As reflected in this Circuit's cases, the greater the autonomy and decisionmaking ability an individual has in his or her position, the more likely that individual is to be a policymaker for the purposes of the *Elrod-Brati* exception. *Compare Knight v. Vernon*, 214 F.3d 544 (4th Cir. 2000) (holding that a low-level jailer who is not a sworn deputy is not a policymaker) *and Bland v. Roberts*, 730 F.3d 368 (4th Cir. 2013) (same) *with Claridy v. Anderson*, No. ELJ-13-2600, 2015 WL 1022401 (D. Md. Mar. 9, 2015) (holding that a former Lieutenant with the Baltimore City Sheriff's Office was a policymaker); *see also Stott*, 926 F.2d at 140 ("'An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position.'") (quoting *Elrod*, 426 U.S. at 368).

In his Complaint, McCaffrey describes himself as "the lead detective in complex, high-profile cases, including rape, robbery, and homicide investigations." Compl. ¶ 12. McCaffrey was by no means a junior deputy in the LCSO, but rather someone who had served twenty years in other departments before joining the LCSO in 2005. Compl. ¶ 11. The Complaint also alleges that McCaffrey had the discretion to contact directly the Commonwealth's Attorney's Office and the Medical Examiner's Office and to request the resources of those offices in support of the LCSO's law enforcement mission. Compl. ¶ 74h. Even after drawing all reasonable inferences

9

in Plaintiff's favor, under *Jenkins* and the Fourth Circuit's subsequent pronouncements, a deputy with McCaffrey's alleged experience, seniority and responsibilities within a sheriff's office is a policymaker.

Accordingly, McCaffrey meets the *Elrod-Branti* exception to the general rule against partisan terminations of public employees. Chapman's failure to reappoint McCaffrey in retaliation for his support of Chapman's political rival therefore did not violate the First Amendment. McCaffrey fails to state a claim under 42 U.S.C. § 1983 against either Chapman or the County Defendants.

**B.     Article I, Section 12 of the Virginia Constitution**

Counts II and IV of the Complaint allege a violation of McCaffrey's rights under Article I, Section 12 of the Virginia Constitution and assert an implied cause of action to vindicate those rights. The Supreme Court of Virginia has made clear that "constitutional provisions in bills of rights [such as Article I, Section 12] are usually considered self-executing." *Robb v. Schockoe Slip Fdn.*, 228 Va. 678, 682 (1985). The scope of relief under these "self-executing" provisions of the Virginia Constitution is an unsettled question, as the Supreme Court of Virginia has never recognized an implied cause of action for damages under Article I, Section 12. Although it has recognized a common law cause of action for damages under certain provisions of the Bill of Rights, [2] it has never directly held whether all such self-executing provisions necessarily provide a damages remedy or whether in some circumstances they are simply limitations on state power enforceable only by injunctive relief.[3] In any event, the Court finds no need to predict how the

---

[2] For example, in *Kitchen v. City of Newport News*, 275 Va. 378 (2008), the court upheld an action for damages arising under the self-executing provision of Article I, Section 11. *Id.* at 392. However, Section 11 provides that private property shall not be taken or damaged for public use *without just compensation*. Therefore it was clear from the text of Section 11 that the right established necessarily includes a right to damages for its violation. Section 12 lacks this clarity regarding damages.

[3] Plaintiff argues that because the Supreme Court of Virginia has held that self-executing provisions of the State Constitution waive sovereign immunity, "the waiver of sovereign immunity effected by the Virginia Bill of Rights

Supreme Court of Virginia would decide that issue, *but see Draego v. City of Charlottesville*, No 3:16-cv-57, 2016 WL 6834025 at *23 n.20 (W.D. Va. Nov. 18, 2016), as it has on multiple occasions noted that the federal right in the First Amendment and the state right in Article I, Section 12 of the Virginia Constitution "are virtually identical." *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 444 n.7 (2013); *see also Black v. Commonwealth*, 262 Va. 764, 787 (2001) ("The freedom of speech guaranteed by Article I, § 12 of the Constitution of Virginia is co-extensive with the protections guaranteed by the First Amendment of the Constitution of the United States.") *vacated in part on other grounds*, 538 U.S. 343 (2003). Therefore, Plaintiff's state and federal constitutional free speech claims rise and fall together. Because Plaintiff meets the *Elrod-Branti* exception and cannot pursue a First Amendment claim for retaliation, the Court predicts that the Supreme Court of Virginia would conclude he has no valid claim under Article I, Section 12 of the Virginia Constitution, even were there an implied cause of action for damages.[4]

## IV. CONCLUSION

For the above reasons, plaintiff has failed to state a claim for a violation of the First Amendment or Article I, Section 12 of the Virginia Constitution. Accordingly, Defendants' motions to dismiss for failure to state a claim will be GRANTED and Plaintiff's motion for partial summary judgment DENIED. All other motions will be denied as moot.

---

fully opens the State to liability for compensatory damages for violations of its citizens' rights." Pl.'s Chapman Resp. [Doc. No. 28] 13. However, under *Robb* and its progeny, the Virginia Bill of Rights simply waives the Commonwealth's sovereign immunity to the extent that it creates a self-executing right. That waiver, however, does not define the scope of the available remedies.

[4] McCaffrey has asserted only federal and state constitutional claims. Because there has been no infringement of McCaffrey's constitutional rights, state or federal, the Court need not consider whether the Complaint adequately pleads municipal liability for its § 1983 claim against the County Defendants or whether the Cooperative Agreement renders the County Defendants liable for Chapman's actions. It also need not consider whether the Cooperative Agreement creates in McCaffrey's favor rights in addition to those prescribed by the United States and Virginia Constitutions, as any such rights would be contractual in nature and this Court lacks both federal question and diversity subject matter jurisdiction to consider a claim based on any such contractual rights.

The Court will issue an appropriate order

The Clerk is directed to forward a copy of this Memorandum Opinion to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
October 12, 2017